No. 12-55839

In the
# United States Court of Appeals
for the
## Ninth Circuit

———————————

EDNA BENIS, PAMELA MAREK SITES,
and TODD MAREK,

Plaintiffs-Appellants

v.

SALLIE MAE, INC.,

Defendant-Appellee.

———————————

Appeal from an Order of the United States District Court
for the Central District of California
No. 2:11-CV-402 by the Honorable Otis D. Wright, II

# BRIEF OF APPELLANTS

Patricia Lewis, California Bar No. 212728
Lewis Law
755 West A Street, Suite 100
San Diego, California  92101-0700
(619) 225-0747 Telephone
(619) 255-2452 Facsimile
Attorney for Appellants,
Edna Benis, Pamela Marek Sites, and
Todd Marek

## TABLE OF CONTENTS

Page

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.    Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  Reviewability and Standard of Review . . . . . . . . . . . . . . . . . . . . . . 2

IV.   Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V.    Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.   Factual Background of the Debtors' Claims . . . . . . . . . . . . . . . 6

      B.   Procedural History of the Debtors' Claims Against Sallie Mae . . . 7

           1.   The District Court's Order Granting in Part and Denying

                in Part Sallie Mae's Motion to Dismiss . . . . . . . . . . . . . . . 9

           2.   The Third Amended Complaint . . . . . . . . . . . . . . . . . . . . . 10

           3.   The District Court's Order Granting Sallie Mae's Motion

                to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

           4.   Mrs. Sites' Motion for Reconsideration . . . . . . . . . . . . . . . 12

           5.   The District Court Denied Reconsideration . . . . . . . . . . . . 13

VI.   Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

///

VII.  Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

    A.  Mrs. Sites' Claim of Fraud Based on Forgery is Law of the Case  14

    B.  Sallie Mae's Motion to Dismiss the Third Amended Complaint  .  17

        1.  Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . .  17

        2.  Federal Rule of Civil Procedure 9(b) . . . . . . . . . . . . . . . .  18

        3.  The Debtors' Third Amended Complaint is Responsive

            to the District Court's August 2011 Order . . . . . . . . . . . . .  19

        4.  Truth in Lending Act Amendment Effective August 2008

            Requires Disclosures . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

        5.  Material Concealment . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

            a.  Loan Chart at Origin . . . . . . . . . . . . . . . . . . . . . . . .  22

            b.  Repayment Chart . . . . . . . . . . . . . . . . . . . . . . . . . .  22

            c.  Forbearance Chart . . . . . . . . . . . . . . . . . . . . . . . . .  24

            d.  Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

            e.  The Ultimate Effect of Capitalization . . . . . . . . . . .  25

        6.  Debtors' Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

        7.  Particularity of Pleading . . . . . . . . . . . . . . . . . . . . . . . . . .  27

        8.  The Ambiguities and Uncertainties of the Notes Result

            in Equivocal and Misleading Language . . . . . . . . . . . . . . .  31

9.  Economic Loss Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

10. Mrs. Sites Did Not Consent to the Notes . . . . . . . . . . . . . .  34

VIII.  Conclusion and Summary of Requested Relief . . . . . . . . . . . . . . . . . . . .  34

IX.   Statement of Related Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

      Certificate of Compliance

      Certificate of Service

TABLE OF AUTHORITIES

Page

<u>Cases</u>

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937 (2009) . . . . . . . . . . . . . . . . .  18

*Bell Atlantic Corp v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007) . . . .  17, 18

*Brooks v. ComUnity Lending, Inc.,* 2010 WL 2680265 (N.D. Cal.)
     (Not Reported) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30, 31

*Chevron USA, Inc. v. Bronster,* 363 F.3d 846 (9th Cir. 2004) . . . . . . . . . . .  14, 15

*Fargo v. Sallie Mae, Inc.,* 2012 WL 2238027 (Not Reported), rev.denied . . . .  35

*Gonzalez v. Arizona*, 624 F.3d 1162 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . .  15

*Hahn v. Mirda* (2007) 147 Cal.App.4th 740 . . . . . . . . . . . . . . . . . . . . . . . . .  32

*Husain v. Olympic Airways,* 316 F.3d 829 (9th Cir. 2002) . . . . . . . . . . . . . . .  3

*In re: GlenFed, Inc. Securities Litigation*, 60 F.3d 592 (9th Cir. 1995) . . . . . . .  27

*Kahle  v. Gonzales*, 487 F.3d 697 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . .  3

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) . . . . . . . . . . . . . .  27, 28

*Lim v. City of Long Beach,* 217 F.3d 1050 (9th Cir. 2000) . . . . . . . . . . . . . . .  3, 4

*Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.,*
     No. Civ. S-07-1015 LKK/EFB, 2007 U.S. Dist. LEXIS 67172
     (E.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) . . .  3

*Moss v. United States Secret Service,* 572 F.3d 962 (9th Cir. 2009) . . . . . . . . . . .  3

*Porter v. Jones*, 319 F.3d 483 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Ridgeway v. Montana High School Ass'n*, 858 F.2d 579 (9th Cir. 1988) . . . . . .  14

*Robinson Helicopter Company, Inc. v. Dana Corporation* (2004)
      34 Cal.4th 979 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32, 33

*Semegen v. Weidner,* 780 F.2d 727 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . .  18

*SmileCare Dental Group v. Delta Dental Plan*, 88 F.3d 780 (9th Cir. 1996) . .  17

*Swartz KPMG LLP,* 476 F.3d 756 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . .  18

*United Guaranty Mortgage Indemnity Co. v. Countrywide Financial Corp.,*
      660 F.Supp.2d 1163 (C.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

*Washington v. Baenziger*, 673 F.Supp. 1478 (N.D. Cal. 1987) . . . . . . . . . . . .  32

<u>Statutes</u>

15 U.S.C. § 1638 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20, 21

28 U.S.C. Section 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

28 U.S.C. Section 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

28 U.S.C. Section 1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

California Civil Code Section 1709 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

California Civil Code Section 1710 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

California Civil Code Section 1788 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Rules

Federal Rule of Civil Procedure 9 . . . . . . . . . . . . . . . . . . . . . . .  2, 10, 17, 18, 27, 28

Federal Rule of Civil Procedure 12 . . . . . . . . . . . . . . . . . . . . . . .  2, 8, 9, 12, 17, 18

Federal Rule of Civil Procedure 54  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Federal Rule of Civil Procedure 60 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Ninth Circuit Rule 28-2.2  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Ninth Circuit Rule 28-2.6  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

I.    STATEMENT OF JURISDICTION

Pursuant to Ninth Circuit Rule 28-2.2, plaintiffs-appellants, Edna Benis ("Mrs. Benis"), Pamela Marek Sites ("Mrs. Sites"), and Todd Marek, collectively referred to as "the debtors," submit the following statement of jurisdiction.

a.    The United States District Court for the Central District of California (the "District Court") had subject matter jurisdiction over this action against defendant-appellee, Sallie Mae, Inc. ("Sallie Mae"), pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(b).

b.    The District Court entered an order granting Sallie Mae's motion to dismiss on November 14, 2011 (Excerpts of Record ["ER"] 38), and denied the debtors' request for reconsideration on December 27, 2011 (ER 36).  The District Court's order became final on April 9, 2012, when debtors dismissed with prejudice the last of the remaining defendants and causes of action (ER 28). This court has jurisdiction pursuant to 28 U.S.C. § 1291.

c.    On May 4, 2012, the debtors' timely filed their joint appeal from the District Court's order granting Sallie Mae's motion to dismiss on November 14, 2011, and from the denial of reconsideration on December 27, 2011 (ER 13), pursuant to Federal Rules of Appellate Procedure 4(a)(1)(A).

II.    ISSUES PRESENTED

Did the District Court commit legal error on November 24, 2011, when it summarily granted dismissal of Mrs. Sites' cause of action for fraud based on forgery, after it had denied dismissal of the same claim for fraud based on forgery by its findings and order of August 24, 2011?

Did the District Court commit legal error when it summarily granted dismissal on November 14, 2011, of the debtors' first cause of action for fraud and deceit, when the nonconclusory facts alleged in the third amended complaint and reasonable inferences drawn from those facts plausibly suggest a claim to relief?

III.   REVIEWABILITY AND STANDARD OF REVIEW

Debtors allege that the District Court committed error on November 14, 2011, when it signed Sallie Mae's proposed order (ER 38), summarily granting dismissal for failure to state a claim and failure to plead fraud with particularity, under Federal Rule of Civil Procedure 12(b)(6) and 9(b), for the reasons that (a) the District Court had previously issued its order on August 24, 2011, expressly finding that Mrs. Sites sufficiently stated a claim for fraud based on forgery (ER 40, 48-49), and (b) the third amended complaint alleged sufficient nonconclusory detailed facts from which reasonable inferences could be drawn to plausibly suggest the debtors have a claim for fraud and deceit (ER 67).

The appellate court reviews *de novo* an order of dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See, Kahle v. Gonzales*, 487 F.3d 697, 699 (9th Cir. 2007).   While the review is limited to the four corners of the complaint, alleged material facts which are well-pleaded are accepted as true and construed in the light most favorable to the plaintiffs.  *See, Manzarek v. St. Paul Fire & Marine Ins. Co.* 519 F.3d 1025, 1030 (9th Cir. 2008).

When the court makes findings that the facts are nonconclusory and that reasonable inferences can be drawn from the alleged facts to suggest that plaintiffs have adequately pleaded a claim for relief, the motion to dismiss must be denied. *See, Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).   In August 2011, the District Court issued its order expressly finding that Mrs. Sites stated a claim for fraud based on forgery (ER 40, 48-49).  Mrs. Sites appeals the District Court's summary order granting dismissal with prejudice in November 2011, on the grounds that the August 2011 order is the law of the case to the subsequent order as it relates to Mrs. Sites' claim of forgery.  Findings of facts are reviewed for clear error.  *See, Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002).  Conclusions of law are reviewed *de novo*.   *Id*.  Where no dispute exists as to the facts or rule of law, and the question is whether the facts satisfy the law, the appeal of mixed questions of law and fact is reviewed  *de novo*.  *See, Lim*

v. *City of Long Beach*, 217 F.3d 1050, 1054 (9th Cir. 2000). There are no changes

in the facts regarding Mrs. Sites' allegations of forgery, between the second

amended complaint (ER 115) and the third amended complaint (ER 67). Mrs.

Sites' forgery claim was not dismissed in August 2011 (ER 48-49) but was

summarily dismissed in November 2011 without further findings of fact or

conclusions of law (ER 38). Mrs. Sites is a party aggrieved as to her claim for

fraud based on forgery, without a remedy absent review in this circuit court.

In the August 2011 order, the District Court granted the motion with leave

to amend as to the debtors' remaining claims for fraud, deceit and breach of

contract (ER 40). The District Court's August 2011 order pointed out specific

deficiencies (ER 40). The debtors alleged further specific facts in the third

amended complaint (ER67), not present in the second amended complaint

(ER 115), which debtors believe are nonconclusory and provide reasonable

inferences that they have adequately pleaded their remaining claims. But the

summary dismissal by the District Court in November 2011 (ER38), leaves the

debtors as aggrieved parties, without a remedy absent review in this circuit court.

IV.    STATEMENT OF THE CASE

Mrs. Benis is the grandmother, and Mrs. Sites is the mother, of Todd Marek,

who was a student at Brooks Institute of Photography ("Brooks") in Ventura,

-4-

California, from 2004 through 2007 (ER 69). To fund his education, Todd Marek was induced to apply for six private, consumer, student loans with Sallie Mae (ER 70). Mrs. Benis co-signed for two of the loans (ER 71). Sallie Mae claims that Mrs. Sites co-signed for three of the loans, which she denies (ER 71). When Todd Marek left Brooks in the summer of 2007, the aggregate of loans borrowed was $120,445, which increased to $168,418, by September 2008, an increase of 30% in one year (ER 74).

At issue are debtors' claims against Sallie Mae for fraudulent inducement and deceit, alleged as the first cause of action in both the second and third amended complaints (ER 115 and 67). In addition to Mrs. Sites' allegations of forgery (ER 115 and 67), all debtors allege Sallie Mae used equivocal and misleading language and failed to clearly and conspicuously explain terms of the loans, specifically capitalization (ER 115 and 67).

The debtors appeal from the District Court's dismissal, with prejudice, of the first cause of action of the third amended complaint for fraud and deceit.[1]

---

[1]Not at issue here is the second cause of action for breach of contract arising out of continuing efforts to collect loans after Mrs. Benis and Todd Marek had previously paid those loans which was dismissed with prejudice (ER 32).

Also not at issue are claims against three collection agencies for fraud and violations of the California Fair Debt Collection Practices Act (FDCPA), California Civil Code Sections 1788, *et seq.*, (ER 79)which were settled and dismissed with prejudice (ER 28, 30, 34).

V.    STATEMENT OF FACTS

A.    Factual Background of the Debtors' Claims

In 2004, Todd Marek was a student of photography, enrolled at Brooks in the program of Visual Effects & Animation in Ventura, California, until he left Brooks in Summer 2007 (ER 69).   To pay for his tuition and costs of education, Todd Marek was induced to sign applications for private student loans with Sallie Mae (ER 70).  The Sallie Mae Signature Student Loans are private student loans, not federal student loans (ER 70).[2]   Rather, the Sallie Mae Signature Student Loans are subject to consumer remedies (ER 70).

All loans were borrowed by Todd Marek, totaling $120,445 (ER 70-71). The first two loans were co-signed by Mrs. Benis, which totaled $32,045 (ER 71). Sallie Mae added Mrs. Sites as a co-borrower on three loans totaling $60,840, without her knowledge or consent (ER 71).   One loan was signed only by Todd Marek for $27,560 (ER 71).

The promissory notes for Sallie Mae's Signature Student Loans ("Notes"), provide, at Sections B.1 and D.1, that payments are not required during the time

_____

[2]Federal student loans are guaranteed or subsidized by the federal government.  Federal loans may be 'serviced' by Sallie Mae, but they are not private loans at issue here.

while the student is in school (ER 91, 95, 99, 104, 108), a time sometimes referred to as the "Interim Period." Following the Interim Period, the Notes provide, at Section B.2, that repayment will begin on the day following the end of the Interim Period and end "up to 300 months" later depending on the balance owed, which is referred to as the "Repayment Period" (ER 91, 95, 99, 104, 108).

Sallie Mae did not disclose the loan amounts owed until January 1, 2008, the month prior to beginning the Repayment Period (ER 72). At that time, a Loan Information Statement addressed to Todd Marek stated the total loan to be $124,296 (ER 72). Two months later, on March 16, 2008, Sallie Mae added $34,114 to the loans (ER 72) and required a monthly payment of $1,979, an unexpected debt which Todd Marek could not pay (ER 73). Six months later, in September 2008, the loans increased another $10,000, for a total debt of $168,418 (ER 74). Sallie Mae identifies the increase in all loans as "outstanding principal." (ER 72). No explanation was given for the increase in the principal but the debtors believe the increase was caused by capitalization (ER 73).

Without notice to Todd Marek, the loans went into default (ER 74), although notice was sent to Mrs. Benis and Mrs. Sites, on May 30, 2009 (ER 74).

B.    Procedural History of the Debtors' Claims Against Sallie Mae

This case was removed from the California Superior Court for Ventura

County, on January 13, 2011, where Todd Marek had filed a complaint separate from the complaint filed by Mrs. Benis and Mrs. Sites, who also had named Brooks (Career Education Corporation) as a defendant (ER 162 [1][3]).[4]

On March 11, 2011, the District Court consolidated the actions (ER 169 [63]), requiring a consolidated complaint to be filed, as the second amended complaint, on March 21, 2011 (ER 115, 170 [67]).  In January 2011, Sallie Mae had filed a motion to dismiss for failure to state a claim and failure to plead fraud with particularity under Federal Rule of Civil Procedure 12(b)(6) (ER 164 [17]), which was stricken with the consolidation order (ER169 [63]).

After the debtors served the second amended complaint, in April 2011, Sallie Mae filed a second motion to dismiss (ER171 [74]).  On motion for reconsideration by a collector defendant, the District Court withdrew its consolidation order pending further briefing, and vacated Sallie Mae's motion to dismiss (ER 173 [89]).  On May 23, 2011, a new consolidation order was entered (ER 173 [91]), following which Sallie Mae filed a third motion to dismiss the second amended complaint [ER 173 [93]].

———————————————

[3]For documents not included in the Excerpts of Record, reference is made to the docket number in brackets.

[4]After removal, the Brooks defendant settled with Mrs. Benis and Mrs. Sites, and was dismissed with prejudice on March 10, 2011 (ER    [30, 54]).

1.  The District Court's Order Granting in Part and Denying in Part Sallie Mae's Motion to Dismiss

The second amended complaint filed by the debtors alleged claims for fraud and deceit in the first cause of action and breach of contract in the second cause of action (ER 115).  The District Court's order of August 24, 2011, granted in part and denied in part Sallie Mae's motion to dismiss for failure to state a claim and failure to plead fraud with particularity (ER 40), pointing out deficiencies in the second amended complaint and granting leave to amend.   The debtors filed a third amended complaint on September 6, 2011 (ER 67), which did not include the breach of contract allegations except for the breach settled by Mrs. Benis and Todd Marek which is not before this court[5].   The focus here turns to the fraud and deceit claims against Sallie Mae.

The District Court recited that the debtors alleged fraud and deceit for six reasons: (1) signing Mrs. Sites' name, (2) failing to disclose the true meaning of 'capitalized interest,' (3) not disclosing capitalized interest in statements,

///

_____

[5]Even though the third amended complaint did allege breach of contract by Mrs. Benis and Todd Marek against Sallie Mae, regarding the prior settlement of two loans, the parties subsequently settled and dismissed that claim before filing this appeal, on February 16, 2012 (ER 32),

(4) adding unknown charges to increase the principal amount to $168,418,

(5) failing to provide an end date, and (6) continuing to collect loans paid

(ER 46:6-16).   The District Court found that the second amended complaint was

not sufficiently pled as to the sixth reason (ER 46:22-26), the economic loss rule

would not bar the fraud claims as to concealment of material facts or forgery

(ER 47:15-18), claims of concealment were conclusory and not sufficiently pled

(ER 47:25-48:13), and the claim of failing to provide an end date does not show

how debtors were harmed (ER 48:15-19).   The debtors took the District Court's

advice and added facts in the third amended complaint which were nonconclusory,

from which reasonable inferences can be drawn to suggest that debtors have

adequately pleaded their claims for deceit and fraud (ER 67).

The District Court expressly found that Mrs. Sites' allegation of forgery was

adequately pled, even under the standards of Federal Rules of Civil Procedure

9(b) (ER 48:21-49:9).   Its order denied the motion to dismiss as to Mrs. Sites'

claim for fraud and deceit (49:10-11).

2.    <u>The Third Amended Complaint</u>

The debtors filed a third amended complaint (ER 67), focusing on the

District Court's order by adding nonconclusory facts related to the first cause of

action for fraud and deceit.   Debtors alleged in a repayment chart the original

principal borrowed, the loan increases, and the amounts due in March 2008, and the assumed repayment date (ER 72). The debtors quoted the terms of the Notes for the definition of capitalization (ER 73:13-17), and provided a forbearance chart showing the details of the increased loans up to September 2008 (ER 74). The default date was added (ER 74:24-28).

Debtors more explicitly outlined the deceit, alleging that Sallie Mae: (A) used equivocal and misleading language so there is no clear and conspicuous explanation of the terms related to capitalized interest, (B) described 'capitalized interest' as a process that 'may' add interest or fees, when the operative word 'shall' or 'will' should be used, ( C) failed to explain with conspicuous language what triggered capitalized interest to be added, (D) that capitalization was certain to occur, (E) when capitalization would be added, (F) the ultimate effect that capitalization would have to cause the dramatic increase in principal balances, (G) how capitalized interest would affect the loan payments, (H) that adding charges increased the principal to unexpected amounts, (I) disclosure statements were not provided which referred to capitalized interest, and (J) signing Mrs. Sites' name (ER 77:25-79:3).

These misrepresentations coupled with the facts of the egregious amounts charged as shown in the charts, and other allegations, debtors allege that

nonconclusory allegations are made which can lead to reasonable inferences that the debtors stated claims for fraud and deceit.

### 3.    The District Court's Order Granting Sallie Mae's Motion to Dismiss

Sallie Mae again filed a motion to dismiss for failure to plead facts sufficient to state a claim and failure to plead fraud with particularity under Federal Rules of Civil Procedure 12(b)(6) (ER 175 [109]).  Without issuing any further findings of fact or conclusions of law, the District Court signed Sallie Mae's proposed order granting the motion in its entirety, and dismissing the first cause of action with prejudice (ER 38).  This order includes Mrs. Sites' claim for forgery which the District Court had expressly found was sufficiently pleaded in its August 2011 order (ER 48:21-49:9).

### 4.    Mrs. Sites' Motion for Reconsideration

Mrs. Sites moved for reconsideration pursuant to Federal Rule of Civil Procedure 60(b) and Local Rule 7-18, requesting the District Court grant judicial notice of its August 2011 order (ER 178 [139]).  Mrs. Sites' reconsideration request was made on the grounds that the dismissal of Mrs. Sites' first cause of action for fraud is clear error and manifestly unjust.  Mrs. Sites pointed out that even though Sallie Mae's motion requested dismissal as to each of the debtors, the footnote in Sallie Mae's motion stated it did not move to dismiss Mrs. Sites' claim

for fraud, and that the debtors' opposition to Sallie Mae's motion so reminded the court (ER 178 [139-1]).

    5.    The District Court Denied Reconsideration

The District Court's order denied Mrs. Sites' motion to reconsider its order granting the dismissal (ER 36).  Even though the order granting dismissal was expressly made with prejudice (ER 38), the reconsideration order infers it was made without prejudice (ER 37).

The debtors had also requested reconsideration of the District Court's order granting a motion to dismiss by one of the collectors  (ER179 [143]), on the basis that the District Court failed to consider subsequently filed opposition papers which were immediately filed after debtors' attorney discovered that the scanner had malfunctioned and the points and authorities were illegible.

Debtors interpret the District Court's order on reconsideration, stating the prior orders were made without prejudice to filing an amended complaint (ER 37), to be related only to the motion filed by the collector, not the motion made by Sallie Mae.  The order on Sallie Mae's motion was expressly granted with prejudice (ER 39).

VI.    SUMMARY OF ARGUMENT

Without any findings of fact or conclusions of law in the summary dismissal

-13-

of the third amended complaint, the debtors are left in a vacuum of reason to argue

how the District Court reached its November 2011 order of dismissal with

prejudice . We can address Mrs. Sites' August 2011 order on her forgery claim as

being law of the case.  We can request this court review the August 2011 order

*de novo* with an eye to reviewing the entirety of the ambiguities and uncertainties

in the Sallie Mae promissory notes, which are at the heart of the equivocal and

misleading language.

VII.  ARGUMENT

    A.  <u>Mrs. Sites' Claim of Fraud Based on Forgery is Law of the Case</u>

    The doctrine of law of the case generally refers to an appellate decision on a

legal issue that cannot be relitigated in the same case. *See, Chevron USA, Inc. v.*

*Bronster,* 363 F.3d 846, 849 (9th Cir. 2004).  In the district court, the doctrine may

apply to an interlocutory decision of the same or higher courts. *See, Ridgeway v.*

*Montana High School Ass'n,* 858 F.2d 579, 587-588 (9th Cir. 1988), finding that a

successor judge may not disregard a prior judge's order on a settlement agreement.

The district court order, however, may be revised before entry of final judgment

under Federal Rule of Civil Procedure 54(b).

    Exceptions to the doctrine allow reconsideration of a previous decision if

the first decision was clearly wrong, there is an intervening change in law, there

was substantially different evidence, there were changed circumstances, or the previous order was manifestly unjust. *See, Chevron USA, Inc. v. Bronster, supra,* at 849, fn. 1. The doctrine of law of the case is based on policy considerations that put an end to the matter being decided. *See, Gonzalez v. Arizona,* 624 F.3d 1162, 1186 (9th Cir. 2010).

Here, the District Court, in its order denying Sallie Mae's motion to dismiss as to Mrs. Sites' claim for fraud by forgery, made express findings of fact and conclusions of law that her claim is properly pled. The District Court's order reads,

> Finally, the Court finds that Plaintiffs' allegation that Sallie Mae forged Pamela Sites's signature sufficiently alleges a cause of action for fraud. Accepting as true Plaintiffs' allegations that Mrs. Sites did not consent to become a co-signer on any of Marek's loans, then Sallie Mae would have committed fraud by forging her signature. Thus, Plaintiffs' first allegation is not barred by the economic loss rule as it pleads a willful act on the part of Sallie Mae to cause harm. Furthermore, the Court finds that this claim has been properly pled in accordance with the standards of Rule 9(b). Plaintiffs have identified the documents at issue and the party whose signature was allegedly forged. Under the circumstances, it would be unreasonable to expect Plaintiffs to name the actual person who forged Pamela Sites's signature. *See Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.,* No.Civ. S-07-1015 LKK/EFB, 2007 U.S. Dist. LEXIS 67172, at *27-28 (E.D. Cal. Aug. 29, 2007) (finding that the circumstances of fraud can make it unreasonable to require plaintiff to identify the specific individual who perpetuated the tortious activity).

-15-

In sum, the Court DENIES Sallie Mae's Motion to Dismiss Plaintiffs' fraud and deceit claim with respect to Plaintiffs' first allegation. (ER 48:21-49:11).

Mrs. Sites' allegations of fraud by forgery remained the same in the third amended complaint as they were stated in the second amended complaint to which the District Court made these express findings of fact and conclusions of law. The second amended complaint alleges:

> 13.    Mrs. Sites was added as a co-signer, without her permission or knowledge, on three private consumer loans, being Exhibits C, E and F, for a total principal amount of $60,840.  Mrs. Sites did not sign, and did not authorize her signature, either electronically or otherwise, on any of these loans.  Mrs. Sites disputes the validity of these loans (ER 118:22-26).

The third amended complaint alleges:

> 14.    Mrs. Sites was added as a co-signer, without her permission or knowledge, on LOANS C, E and F, for a total principal amount of $60,840.  Mrs. Sites did not sign, and did not authorize her signature, either electronically or otherwise, on any of these loans.  Mrs. Sites disputes the validity of these loans.  (ER 71:14-17).

Here, there has been no activity, other than the filing of the third amended complaint, which would give rise to application of any of the traditional or alternative standards allowing the District Court to exercise discretionary reconsideration of, and change, its August 2011 order regarding Mrs. Sites' claim for fraud based on forgery.  The explanation must be that the November 2011

order of dismissal is legal error.

B.    Sallie Mae's Motion to Dismiss the Third Amended Complaint

Sallie Mae moves to dismiss the first cause of action for fraud and deceit under Rule 12(b)(6) on the grounds that it (1) fails to identify material misrepresentations or concealment, (2) cannot allege damages based on disclosures, (3) does not plead particularity under Rule 9(b), and (4) is barred by the economic loss rule (ER 175 [109]).

1.    Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint, allowing for dismissal of the case if it asserts a theory not viable as a matter of law. *See, SmileCare Dental Group v. Delta Dental Plan*, 88 F.3d 780, 783 (9th Cir. 1996).  The complaint generally need only satisfy minimal requirements of notice pleading under Rule 8(a)(2), which requires "a short and plain statement of the claim showing the pleader is entitled to relief." *See, Porter v. Jones,* 319 F3d 483, 494 (9th Cir. 2003).  Pleadings are construed liberally, all well-pled facts are presumed true, but the allegations of fact "... must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp v. Twombly,* 550 US 544, 555, 127 S.Ct. 1955 (2007).  The complainant must show he is entitled to relief. *See, Bell Atlantic Corp. v. Twombly, supra,* 550 U.S. at 557.  Using "...labels and

-17-

conclusions" or a "... formulaic recitation of the elements of a cause of action will not do." *Id.* The facts pled must be sufficient to be plausible on their face for a complaint to survive a Rule 12(b)(6) motion. *See, Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). To meet the plausibility standard, the complaint must show more than a possibility that an unlawful act has been committed against the plaintiff. Facts that are only consistent with liability will not meet the plausibility requirement. *Id.*

2.    Federal Rule of Civil Procedure Rule 9(b)

Where fraud or mistake is pled, Rule 9(b) requires the pleader to identify "... the circumstances constituting fraud or mistake (which) shall be stated with particularity." The specificity of the allegations must give defendants sufficient notice of the alleged fraudulent misconduct to allow defense of the charge, rather than a plain denial of the charge. *See, Semegen v. Weidner*, 780 F2d 727, 731 (9th Cir. 1985). Specificity requires allegations of "... time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted).

///

3.    The Debtors' Third Amended Complaint is Responsive to the
      District Court's August 2011 Order

The District Court's August 2011 order found that the second amended

complaint was conclusory and not adequately pleaded to allege fraud and deceit,

specifically regarding the debtors' allegations that Sallie Mae (1) failed to disclose

the true meaning of 'capitalized interest,' (2) failed to disclose capitalized interest

in statements, (3) added unknown charges to increase the principal amount to

$168,418, and (4) failed to provide an end date for payment of the loans

(ER 47-48).

The debtors responded to the District Court's concerns by alleging in the

third amended complaint that Sallie Mae  (1) used equivocal and misleading

language so there is no clear and conspicuous explanation of the terms related to

capitalized interest, (2) described 'capitalized interest' as a process that 'may' add

interest or fees, when the operative word 'shall' or 'will' should be used,

(3) failed to explain with conspicuous language what triggered the capitalized

interest to be added, (4) that capitalization was certain to occur, (5) when

capitalization would be added, (6) the ultimate effect that capitalization would

have to cause the dramatic increase in principal balances, (7) how capitalized

interest would affect the loan payments, (8) that adding charges increased the

-19-

principal to unexpected amounts, and (9) disclosure statements were not provided

which referred to capitalized interest (ER 77-79). In short, the debtors were left

with no understanding at all of the terms of the loans.

4.    Truth in Lending Act Amendment Effective August 2008

Requires Disclosures

Amendments to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638(e), *et seq.,* requires disclosures which would have put the debtors on notice of what to

expect when Todd Marek left school. These TILA amendments became effective

August 14, 2008, a year after Todd Marek left Brooks.    The amendments require

that, at the time the application for the loan is signed, private education loans

"shall" disclose, among other things, potential range of interest rates, whether the

rates are fixed or variable, changes in rates without a co-borrower, potential

finance charges, late fees, penalties and adjustments to principal, range of fees,

term of the private loan, whether interest will accrue while the student is enrolled

in school, the total cost of the loan over its life [15 U.S.C. §§ 1638(e)(1)(A)-( R)].

After the loan is approved, disclosures shall add, clearly and conspicuously,

among other things, the maximum term of the loan, and an estimate of the total

amount for repayment (15 U.S.C. §§ 1638(e)(2)(A)-(P)].

Unfortunately for the debtors here, these TILA amendments were too late to

-20-

give the debtors notice of what to expect when Todd Marek left Brooks. The TILA amendments were too late to prevent Sallie Mae's addition of egregious fees against these debtors. But it is interesting that Sallie Mae's Notes make reference to "Truth in Lending Disclosure" which the Notes represent will be made at a later time (ER 91, 95, 99, 104, 108 at § B6). This is misleading to the debtors who are unaware that TILA requirements will not apply to these Notes which were made prior to the effective date of these TILA requirements.

The Notes here refer to interest rate disclosures which will be made upon the occurrence of a future event, that supplemental fees in an unstated amount will be made at disbursement and at repayment and will be stated in disclosures to be provided later, all at some future unknown date after the loan has been made (ER 91, 95, 99, 104 at § C-2) (ER 92, 96, 99, 104 at §§ F-1, F-2). By making these references, Sallie Mae has misled the debtors into believing that TILA disclosures would protect them.

### 5.    Material Concealment

The third amended complaint alleges that Sallie Mae failed to explain the *ultimate effect* that capitalization would have when added to the Notes, either in the Notes themselves or in any disclosure notices, which is a material disclosure required to understand the terms of the loans (ER 73:7-11). This effect is seen in

-21-

the loan chart and the repayment chart shown in the third amended complaint.

        a.   <u>Loan Chart at Origin</u>.  Each loan is charted in the third amended complaint showing the date of the loan and the principal borrowed. The loan applications and Notes are attached to the third amended complaint as Exhibits A through F.  The total original principal borrowed on all loans is $120,445 (ER 71).

        b.   <u>Repayment Chart</u>. Although Sallie Mae did not disclose the loan amounts owing at the beginning of the Repayment Period, the Repayment Period would have begun on February 2, 2008 (ER 72:1-4).  Notice of the principal amounts owed was given on January 1, 2008, one month prior to the Repayment Period, and another  principal notice was given six weeks after the Repayment Period, on March 16, 2008.  On January 1, 2008, the total principal amounts increased $3,851 (ER 72), which plaintiffs believe is due to capitalization (ER 73:1-3) because, under the terms of the Notes, the principal would  only increase due to capitalization as stated in the Notes:

> Capitalized Interest and Other Amounts - From time to time, any interest, fees, charges and costs due and not yet paid may be added, without notice, to the principal amount of the loan. This addition is called "capitalizing."  Since interest accrues on the outstanding principal balance, capitalizing increases the total cost of the loan. (ER 91, 95, 99, 104, 108 at § B.3).

On March 16, 2008, Sallie Mae added $34,114 to the principal amounts, in addition to the $3,851 added on January 1, 2008 (ER 74).   Sallie Mae did not disclose this ultimate effect that capitalization would have on the loans when the loans were made (ER 74:18-21).   The loans themselves provide that disclosures of charges are made at future dates, after the loan is borrowed and disbursed to the school.  By this time, the student has enrolled at the school, is taking classes and incurred student loan debt, too late to rescind.

The first four loans (Loans A-D) define Disclosure as:

> The Truth in Lending Disclosure that will be sent
> at the time of my first disbursement and which is
> hereby incorporated into this Note.  (ER 91, 95, 99, 104 at § B6).

The fifth loan (Loan E), provides two definitions for Disclosure: Interim and Final, as follows:

> Interim Disclosure - The Truth in Lending Disclosure
> that will be sent at the time of my first disbursement and
> which is hereby incorporated into this Note.  (ER 108 at § B.6).

> Final Disclosure - The Truth in Lending Disclosure that
> will be sent at the time the repayment schedule for my loan
> is established and which  is hereby incorporated into this
> Note. ...  (ER 108 at § B.7).

The material concealment is the omission of the ultimate affect that capitalization will have on the loan, which is not made until a disclosure is given at some future

-23-

date after the loan has been approved, disbursed and the debt incurred.   Indeed, the disclosure statements given by Sallie Mae after Todd Marek left Brooks, fail to refer to capitalized interest at all.  (ER 73:1-5).   The Notes are deceptive.

        c.   <u>Forbearance Chart</u>.   The March 16, 2008, notice to Todd Marek required a $1,979 monthly repayment, was unanticipated, could not be paid, and the loans were put into forbearance of the payments through September 2008 (ER 73:25-28).  Suddenly, on September 17, 2008, Sallie Mae added another unexplained $10,008 to the March loan principal, increasing the total principal by $44,122 from January 1, 2008 to September 17, 2008 (ER 74:1-21).  Again, capitalization had to have occurred since that is the only method provided in the Notes to increase the principal (ER 74:18-21).

      The capitalization of $3,851 on January 1, 2008, increased to $34,114 on March 16, 2008, and to $44,122 on September 17, 2008, so the Notes had a new principal of $168,418 (ER 74:1-21).   None of this ultimate affect of capitalization on the principal of the loans had been disclosed at the time of applying for the loans in 2004, 2005, 2006 or 2007.   Nor had this ultimate affect of capitalization on the principal of the loans been identified in the subsequent disclosures made after inception of the loans (ER 73:1-5, 74:18-21, 78:18-19, 79:1).  The true meaning of capitalization had been concealed.

-24-

d.     <u>Default</u>.   Payments on the unexpectedly

increased capitalized loans could not be made and the loans went into default on

May 30, 2009 (ER 74:24-28).

e.     <u>The Ultimate Effect of Capitalization</u>.

While the Notes describe that capitalization may occur (ER 91, 95, 99, 104,

108 at § B.3), and even that interest and other amounts will accrue until the entire

loan is paid in full, (ER 91, 95, 99, 104, 108 at § C.1), the Notes fail to explain the

ultimate affect capitalization will have on the principal or the repayments.  The

language is equivocal and misleading.  The ultimate affect on the Notes is clearly

absent from any disclosure at the time the loans were considered and signed.

The Notes do not explain or even hint that the capitalization process will

increase the principal to almost 30% at the beginning of the Repayment Period.

By March 16, 2008, the first notice given after the Repayment Period began, the

principal amounts totaled $158,410, an increase of approximately 28.5% (ER

72:10-26).

There is nothing in the Notes to explain that the debt will increase by almost

40% of the loan principal in the months following Repayment, increasing to

$168,418, from the original loan of $120,445, by September 2008 (ER 74:1-16).

Neither is there any future disclosure made before the Repayment Period,

-25-

which foretold of such dramatic increases either by capitalization or any other means (ER 73:1-5).   The only notice of increases to the notes was the January 1, 2008, notices which only increased the principal amounts by $3,851, and that amount was not explained (ER 72:6-74:21).  The Notes refer to future disclosures as described above (ER (ER 91, 95, 99, 104, 108 at § B6)(ER 108 at § B7).

The ultimate effect and true meaning of capitalization was concealed.  The terms of the Notes as it relates to the ultimate effect of capitalization are equivocal, unclear and deceptive.  There is no information with which a potential borrower could be informed that their loans would increase by 30% or 40% of the amount borrowed, at repayment.

   6.   Debtors' Damages

Sallie Mae argues that the debtors have not incurred damages based on the disclosures and, thus, have no claim for fraud or deceit.   But it is the lack of disclosures upon which debtors base their damages.  The Notes did not explain the ultimate effect of capitalization on the loans.  The future disclosures referenced in the Notes, did not explain the ultimate effect of capitalization on the loans (ER 73:1-5).  The only disclosures made about capitalization failed to explain anything other than capitalization "may" occur (ER 91, 95, 99, 104 at § B3), and interest with other amounts will accrue until the entire loan is paid in full

-26-

(ER 91, 95, 99, 104 at §C.1), none of which tells the borrower at inception of the loans that the principal borrowed could reach a 30% increase because of capitalization by the beginning of the Repayment Period (ER 74:1-21).  The future disclosures required by the Note failed to even mention capitalization (ER 73:1-5).

7.    Particularity of Pleading

Sallie Mae argues that the first cause of action for fraud and deceit does not satisfy the court's heightened pleading standards (ER 175 [109]).  Federal Rule of Civil Procedure 9(b) provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  This pleading requirement is meant to ensure (a) fair notice is given of the claim, (b) safeguard against spurious accusations, (c) meritless fraud will be reduced, and (d) protection of defendants against "strike" suits.  *See, Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

The amount of specificity required for fraud depends upon the amount of access plaintiff has to the specific facts, considering the complexity of the case, the parties' relationship, the context of the fraud's occurrence, and the amount of specifics necessary for the defendant to respond.  *See, In re: GlenFed, Inc. Securities Litigation,* 60 F.3d 592, 593 (9th Cir. 1995).  But Rule 9 does not

-27-

abrogate the notice pleading standard of Rule 8 and the federal courts must read both rules together. *See, Kearns v. Ford Motor Co., supra*, 567 F.3d at 1124.

The debtors disagree with Sallie Mae that the third amended complaint does not plead fraud with sufficient specificity to meet Rule 9(b) standards. The debtors address the who, what, when and how of the deceit as follows:

As to "who" made the misrepresentations, debtors argue that the Notes, which contain the deceit and fraudulent statements, were authored, claimed and copyrighted by Sallie Mae, as shown in the bottom right corner of each page of the Notes (ER 90-113).

As to "what" affirmative misrepresentations were made, the fraudulent misconduct and deceit is outlined in third amended complaint (ER 71:20-74:21). Specifically the third amended complaint summarized the affirmative misrepresentations as follows:

> Sallie Mae made omissions of critical information, in a pervasive pattern, by:
>
> 1.   failing to disclose the *effect* and true meaning of capitalization including, but not limited to, the reality that capitalization would dramatically increase the principal balances of the loans (ER 77:1-79:1);

///

-28-

2.    providing disclosure statements with no reference
       to capitalization or the increases to the loans
       (ER 77:1-79:1);

3.    Capitalizing the principal amounts of the Notes
       from $120,445, to $168,418, by September 17, 2008,
       an increase of $47,973, without explanation
       (ER 77:1-79:1);

As to "when" the misrepresentations were made, debtors argue that the

omissions and deceit are inherent in the Notes themselves which are attached to

the third amended complaint as Exhibits A, B, C, D and E.

As to "how" debtors relied upon the misrepresentations, debtors argue that

they relied by becoming indebted for $120,445, to which Sallie Mae added

$47,973, increasing the loan debt by almost 40%, to $168,418, without notice of

the increase or explanation of the effect that capitalization would have on the

principal of the Notes.  The debtors later discovered the deception regarding

capitalized interest.   (ER 77:1-79:1).

As to "how" debtors have been damaged, debtors argue that their damages

are stated with the exponential increases in the loans regardless of the payments,

and the loss of valuable credit ratings (ER 81:51-82:8) (ER 82:19-21).

Sallie Mae authored the promissory notes as is evidenced by their copyright

(ER 90-113).   Because Sallie Mae was the preparer of the promissory notes, Sallie

-29-

Mae knew of the falsity and omissions contained in the Notes, yet continued, with the offer of each loan, to make these false representations and omissions.

The debtors offer as persuasive authority the unreported case of *Brooks v. ComUnity Lending, Inc.,* 2010 WL 2680265 (N.D. Cal.) (Not Reported), which is relevant to the loan disclosure issues debtors submit here. In a TILA case regarding predatory home loan lending, the putative class plaintiff, *Brooks,* alleged common law claims for fraudulent omissions and statutory unfair business practices, claiming that the mortgage loan disclosure was not clear and conspicuous where the language stated: "If your monthly payment is not sufficient to pay all interest due, any accrued and unpaid interest will be added to the Principal ... This means the balance on your loan *could* increase." *Brooks v. ComUnity Lending, supra*, at p. 5 (*italics* in original). Further, the *Brooks* loan states, "The interest rate I will pay *may* change in accordance with Section 4 of the Note." *Id.* (*italics* in original).

The *Brooks* discussion of whether a lender gives clear and conspicuous information sufficient to provide the borrower with material facts upon which to base a decision to borrow or not, is the central issue to plaintiffs' fraud claims here. The *Brooks* court stated that all the disclosures must be read as a whole and considered in determining whether they were clear, conspicuous and complete.

-30-

"Viewed in isolation, many of the disclosures were accurate.  However, the information must be viewed in context of how it was disclosed to Plaintiff." *Brooks v. ComUnity Lending, supra* at p. 8.  The *Brooks* plaintiff argued that "will" and "may" was an undisclosed certainty.   The court found that, taken together, plaintiff may be able to show the disclosures were misleading. *Brooks v. ComUnity Lending, supra* at pp. 8-9.  The court denied the Federal Rules of Civil Procedure 12(b)(6) and 9(b) motion to dismiss based on fraud, finding that "the claim is based on specific omissions of material fact in the loan documents used by ComUnity .... [and] plaintiff sufficiently identified those omissions."   *Brooks v. ComUnity Lending, supra*, at p. 10)

      8.   <u>The Ambiguities and Uncertainties of the Notes Result in</u> <u>Equivocal and Misleading Language</u>

Here, Sallie Mae's promissory notes have misled the debtors by stating the lender "may" assess capitalized interest to the loans if debtors are unable to make the payments, but then also saying that the lender "will" accrue interest to the loans.   Debtors allege that the promissory notes contain language which is not clear, conspicuous and complete, the language is deceptive and misleading, subject to uncertainty in terms, giving rise to the harm that Sallie Mae did add approximately 40% of the original principal as an added amount to the loans.

Under California law, a common law fraudulent omission is one where the defendants (a) concealed or suppressed a material fact, (b) were under a duty to disclose, (c) intended to defraud plaintiffs, (d) plaintiffs were unaware of the concealment, and  (e) were damaged as a result. *See, Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 748, 54 Cal.Rptr.3d 527. *See also,* California Civil Code §§1709, 1710.

The very nature of a fraudulent omission claim implies that the plaintiff cannot aver a specific time or place of the defendants' failures to act, in which case an alternative pleading may be asserted. *See, Washington v. Baenziger,* 673 F.Supp.1478, 1482 (N.D. Cal. 1987).

Debtors submit that enough information has been given to provide Sallie Mae with notice of the allegations of misconduct to make a response.

9.    Economic Loss Rule

Sallie Mae argues that the economic loss rule warrants dismissal of those claims which allegedly mirror the breach of contract causes of action brought by Todd Marek and Mrs. Benis (ER 175 [109]).

The economic loss rule provides that a plaintiff must make his economic recovery in contract, unless there is a harm which goes beyond the contract. *See, Robinson Helicopter Company, Inc. v. Dana Corporation* (2004) 34 Cal.4th 979,

988. Thus, the economic loss arising out of a defective product carries a remedy arising out of contract. *Id.* Damages in tort are allowed in contract where there is injury arising from a breach of duty, a breach of the covenant of good faith and fair dealing with insurance, wrongful discharge in violation of public policy, or fraudulent inducement of the contract. *See, Robinson Helicopter v. Dana Corporation, supra,* 34 Cal. 4th at 989-990. These instances arise either independent from the contract or from intentional conduct which also is intended to harm. *See, Robinson Helicopter v. Dana Corporation, supra,* 34 Cal. 4th at 990. Further, a fraud committed during the formation or performance of a contract allows recovery in both contract and tort. *Id.*

"The economic loss rule is designed to limit liability in commercial activities that negligently or inadvertently go awry, not to reward malefactors who affirmatively misrepresent and put people at risk." . *Robinson Helicopter v. Dana Corporation, supra,* 34 Cal. 4th at FN 7. "'California also has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices.' (Citation)." *Robinson Helicopter v. Dana Corporation, supra,* 34 Cal. 4th at at 992. *See also, United Guaranty Mortgage Indemnity Co. v. Countrywide Financial Corp.,* 660 F.Supp.2d 1163 (C.D. Cal 2009), in which a subprime mortgage insurer filed actions against the mortgage companies alleging contract,

tort and statutory claims.

Here, we see fraudulent misrepresentation and concealment in the formation of the Notes, documents which are copyrighted by Sallie Mae, and about which the unknowing borrower has no input into their formation. The ultimate effect of undisclosed capitalization, as recited above, is not a bargained-for expectation.

### 10.    Mrs. Sites Did Not Consent to the Notes

Sallie Mae recites in a footnote that it is not challenging Mrs. Sites allegation that Sallie Mae signed her signature on some of the Notes, without her permission or consent (EA 175 [109]). In her opposition (EA 175 [113]), Ms. Sites respectfully reminds the court that, in its August 2011 order on Sallie Mae's motion to dismiss, the court decided that Mrs. Sites sufficiently alleged a cause of action for fraud on that basis (EA 48, 49).

## VIII.  CONCLUSION AND SUMMARY OF REQUESTED RELIEF

The debtors respectfully request that the District Court's November 2011 order dismissing the third amended complaint with prejudice (ER 38), be vacated and this action remanded for further proceedings.

## IX.    STATEMENT OF RELATED CASES

Debtors are not aware of any cases pending in this Court that would be deemed related pursuant to Ninth Circuit Rule 28-2.6. The debtors' counsel has

-34-

filed a similar appeal which was denied, with different facts and a different

plaintiff, to the California Court of Appeals, Second District, Division 6, entitled

*Fargo v. Sallie Mae, Inc.*, 2012 WL 2238027 (Not Reported), rev. denied.


DATED:   March 29, 2013            Respectfully submitted,

                                   LEWIS LAW

                                       /s/ Patricia Lewis

                                   By: _____
                                        Patricia Lewis
                                        Attorney for Plaintiffs-Appellants,
                                        Edna Benis, Pamela Marek Sites,
                                        Todd Marek

**Form 6.    Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒ this brief contains ___8,015___ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒ this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)* Word Perfect 10 *(state font size and name of type style)* Times New Roman 14 , *or*

☐ this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* with *(state number of characters per inch and name of type style)*

_____ .

Signature | /s/ Patricia Lewis

Attorney for | Plaintiffs-Appellants, Benis, Sites, Marek

Date | March 29, 2013

| 9th Circuit Case Number(s) | 12-55839 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) ⎡ March 29, 2013 ⎤ .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)    | /s/ Patricia Lewis |

*************************************************************************

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) ⎡          ⎤ .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

| |
|---|
| |

Signature (use "s/" format)    | |